UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMELA HUNTER,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                  Case No. 1:07-CV-798

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 36 years of age at the time of the ALJ's decision. (Tr. 23, 64). She completed the tenth grade and worked previously as a warehouse clerk and machine operator. (Tr. 92-95, 110, 115).

Plaintiff applied for benefits on February 9, 2004, alleging that he had been disabled since December 13, 2002, due to arthritis and depression. (Tr. 64-66, 109, 163-64). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-63, 165-74). On November 7, 2006, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 482-506). In a written decision dated March 22, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 14-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

3

## **RELEVANT MEDICAL HISTORY**

On October 3, 2001, Plaintiff was examined by Dr. J. Howard Uhl. (Tr. 209-10). Plaintiff reported that she was experiencing "aching and soreness" in her knees and hands. (Tr. 209). Plaintiff reported that she had "difficulty with activity such as buttoning shirts or jeans, opening jars, and lifting." (Tr. 209). She also reported that "her knees may be troubled if she stands, sits or walks too long." (Tr. 209). X-rays of Plaintiff's hands revealed a "mild degree of periarticular demineralization," but were otherwise "negative." (Tr. 215).

An examination of Plaintiff's hands revealed swelling and tenderness in several locations, but Plaintiff exhibited "full fist formation with normal grip strength." (Tr. 210). An examination of Plaintiff's wrists and elbows revealed no evidence of swelling or limitation of motion. (Tr. 210). Plaintiff exhibited full range of motion in her neck and lumbar spine. (Tr. 210). An examination of Plaintiff's hips and lower extremities revealed no evidence of swelling, tenderness, or limitation of motion. (Tr. 210). Dr. Uhl concluded that

> Rheumatoid arthritis appears likely. The rheumatoid factor titer is not particularly impressive but she does have some synovitis of the small joints of the hands and her symptoms are typical of inflammatory joint pain.

(Tr. 210).

On December 12, 2001, Plaintiff was again examined by Dr. Uhl. (Tr. 208). Plaintiff reported that her arthritis was "considerably better" with medication. (Tr. 208). Specifically, she reported that her hands were "still a little stiff" and she was experiencing "less knee pain." (Tr. 208).

On May 20, 2002, Plaintiff was examined by Dr. Asif Azeem. (Tr. 175). Plaintiff reported that she was experiencing weakness and arthralgias. (Tr. 175). Plaintiff also reported that

she recently "went. . .to donate blood and was turned down with a diagnosis of hepatitis C." (Tr. 176). Plaintiff "appeared quite healthy" and tests for hepatitis A, B, and C were all negative. (Tr. 175). The doctor concluded that Plaintiff's "easy fatigability and musculoskeletal complaints are likely related to her diagnosis of rheumatoid arthritis." (Tr. 175).

On November 19, 2003, Plaintiff was examined by Dr. Iyad Al-Shwaf. (Tr. 220-21). An examination of Plaintiff's hands revealed synovial hypertrophy of the third PIP and first MCP of the left hand. (Tr. 220). Plaintiff exhibited "slight" tenderness in her wrists, but was able to "make full fists with good grip bilaterally." (Tr. 220). Plaintiff exhibited "good range of motion" in her shoulders, hips, knees, and ankles. (Tr. 220). An examination of Plaintiff's cervical spine revealed "good lateral rotation and flexion extension." (Tr. 220).

X-rays of Plaintiff's lumbosacral spine revealed "exaggeration of lumbar lordosis. . .with slight levoscoliosis. . .the lumbosacral spine otherwise appears normal." (Tr. 224). X-rays of Plaintiff's hands revealed "minimal degenerative changes. . .in the small joints of the wrists and hands." (Tr. 223). There was also evidence of a "moderate degree" of subluxation of Plaintiff's left thumb, without evidence of fracture or dislocation. (Tr. 223). Dr. Al-Shwaf concluded that Plaintiff's symptoms were "most consistent with rheumatoid arthritis," for which he prescribed medication. (Tr. 220).

On December 29, 2003, Plaintiff was examined by Dr. Al-Shwaf. (Tr. 218). Plaintiff reported that her "symptoms have improved." (Tr. 218). An examination of Plaintiff's hands revealed "no significant synovitis of [the] small joints" and "minimal MTP tenderness." (Tr. 218).

On May 17, 2004, Plaintiff participated in a consultive examination conducted by Jeffrey Kieliszewski, Ph.D. (Tr. 286-89). The results of a mental status examination were

unremarkable. (Tr. 287-88). Plaintiff was diagnosed with adjustment disorder with depressed mood and her GAF score was rated as 62.[1] (Tr. 289).

On June 3, 2004, J. Michael McCarthy, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 290-305). Determining that Plaintiff suffered from adjustment disorder with depressed mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 291-99). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 300). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 300).

On October 12, 2004, Plaintiff was examined by Dr. Jan Ciejka. (Tr. 334-35). Plaintiff exhibited full range of motion in her neck and shoulders with no evidence of pain or tenderness. (Tr. 334). An examination of Plaintiff's elbows and wrists revealed full range of motion with no evidence of synovitis or tenderness. (Tr. 334). An examination of Plaintiff's hands revealed "minimal" synovitis at the first MCP joint of the left hand, otherwise the doctor discerned no evidence of synovitis or tenderness. (Tr. 334). Plaintiff was able to make "100% fists." (Tr. 334). An examination of Plaintiff's hips and lower extremities revealed full range of motion with no evidence of pain, swelling, tenderness, erythema, or warmness. (Tr. 334). An examination of

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A score of 62 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

Plaintiff's spine and SI joints revealed no evidence of tenderness. (Tr. 334). Dr. Ciejka concluded that Plaintiff's arthritis was "controlled" with medication. (Tr. 335).

Plaintiff was examined by Dr. Ciejka on seven occasions between December 20, 2004, and July 6, 2006. (Tr. 325-33). Following each examination, the doctor reported that Plaintiff's arthritis was "controlled." (Tr. 325-33).

On July 26, 2006, Plaintiff participated in an elctroneurodiagnostic evaluation, the results of which were "normal. . .with no evidence of neuropathy or radiculopathy." (Tr. 349-52).

On August 16, 2006, Plaintiff was examined by Dr. Rebecca Vandyke. (Tr. 460-62). The results of a liver biopsy revealed "mildly active" hepatitis. (Tr. 460). The doctor noted that Plaintiff was presently taking Enbrel for her arthritis which "may" accelerate progression of the hepatitis. (Tr. 460-61). The doctor further noted, however, that "immunostimulation with interferon for treatment of hepatitis C can cause a flare in rheumatoid arthritis." (Tr. 461).

The doctor informed Plaintiff that she could either begin a "trial" course of interferon therapy, during which Plaintiff's condition would be "very closely" monitored or "omit hepatitis C treatment for now and have [a] repeat liver biopsy in 5 to 7 years." (Tr. 461-62). Dr. Vandyke recommended that Plaintiff continue treating her arthritis because "we are very confident that [Plaintiff's] liver is healthy at this time." (Tr. 462). Plaintiff agreed with this approach, noting that "she is very pleased with the status of her rheumatoid arthritis at this time, and describes that being on Embrel is like being touched by an angel." (Tr. 462).

On November 22, 2006, Dr. Ciejka completed a report regarding Plaintiff's physical ability to perform work-related activities. (Tr. 456-59). The doctor reported that during an 8-hour workday, Plaintiff can sit for 8 hours, stand and walk for 6 hours each, and sit/stand for 8 hours. (Tr.

456). The doctor reported that Plaintiff can frequently lift/carry up to 25 pounds. (Tr. 456). Dr. Ciejka reported that Plaintiff is able to perform simple grasping and fine manipulation activities with both hands. (Tr. 457). The doctor also reported that Plaintiff can frequently bend, twist, squat, kneel, crouch, crawl, stoop, climb stairs, and reach above shoulder level. (Tr. 457).

At the administrative hearing, Plaintiff testified that her arthritis pain averages "about a three" (on a scale of 1-10), but increases to 8 or 9 if she performs "strenuous activities, such as raking [her] leaves." (Tr. 489-91). Plaintiff reported that she cooks, washes dishes, vacuums, washes laundry, shops for groceries, and cares for her personal needs. (Tr. 496).

Plaintiff testified that she would not experience any difficulty working with the public or getting along with co-workers and supervisors. (Tr. 493-94). She reported that she is able to follow work rules and simple instructions. (Tr. 494). Plaintiff testified that during an 8-hour workday she could sit for six hours and stand/walk for two hours. (Tr. 495).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) rheumatoid arthritis, (2) osteoporosis, and (3) low back pain secondary to sacral insufficiency compression fracture. (Tr. 16). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ concluded that while Plaintiff was unable to perform any of her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 23-24). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience,

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) she can lift/carry 10 pounds; (2) in an 8-hour workday, with normal breaks, she can sit for six hours and stand/walk for two hours; (3) she must be able to sit or stand at will; (4) she can only occasionally stoop, crouch, crawl, or climb ramps or stairs; (5) she cannot climb ladders, ropes, or scaffolds; (6) she must avoid concentrated exposure to vibrations; and (7) she must avoid even moderate exposure to extreme cold. (Tr. 20-21). The ALJ also determined that Plaintiff experiences mild restrictions in the activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 21). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964.

Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda. The vocational expert testified that there existed at least 4,300 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 501-05). The only issue which Plaintiff asserts in her appeal is that "the ALJ erred by finding that the 4,300 jobs listed by the vocational expert were (sic) a significant number of jobs."

An examination of the vocational expert's testimony reveals that he identified far more than 4,300 jobs that Plaintiff could perform despite her limitations. In response to the ALJ's hypothetical question describing an individual with Plaintiff's RFC, the vocational expert testified that such a person would be able to perform "essentially. . .the full range of sedentary" work. (Tr. 504-05). The vocational expert further testified that the 4,300 jobs he identified were merely "examples" of some of the many sedentary jobs which Plaintiff could perform consistent with her RFC. (Tr. 504-05).

Plaintiff concedes that if the vocational expert's testimony "is read as meaning that the 4,300 jobs which were enumerated were simply examples, then this argument will not be valid."

(Dkt. #9 at 12). Rightly so, as the ability to perform the full range of sedentary work constitutes sufficient evidence that there exists a significant number of jobs that the claimant can perform. *See, e.g., Guthrie v. Astrue*, 2008 WL 2660918 (6th Cir., July 7, 2008) (claimant "could perform a full range of sedentary work, which qualified him for a significant number of jobs").

Furthermore, even if the vocational expert's testimony is interpreted as identifying only 4,300 jobs that Plaintiff could perform, such nonetheless represents a substantial number of jobs, sufficient to support the ALJ's decision in this matter. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                 Respectfully submitted,

Date:  July 30, 2008                              /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge